# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

Case No. 22-12419

---

CONTINENTAL HOLDINGS, INC., *Appellant*

*v.*

HOUSTON PIPE LINE COMPANY, L.P., and HPL GP, LLC, *Appellees*

---

On Appeal from the
United States District Court
for the Middle District of Florida
Case No. 3:12-cv-850-HES

---

# APPELLEES' ANSWER BRIEF

---

Ethan J. Loeb
Steven Gieseler
Allison C. Doucette
BARTLETT LOEB HINDS & THOMPSON, PLLC
100 N. Tampa Street, Suite 2050
Tampa, Florida 33602
(813) 223-3888
*Attorneys for Houston Pipe Line Company, L.P. and HPL GP, LLC*

## APPELLEES, HOUSTON PIPE LINE COMPANY, L.P. AND HPL GP, LLC CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Appellees, HOUSTON PIPE LINE COMPANY, L.P. and HPL GP, LLC by and through their undersigned counsel, and pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, hereby files this Certificate of Interested Persons and Corporate Disclosure Statement.

Appellees disclose as follows the name of each person, magistrate judge, district court judge, attorney, association of persons, firm, law firm, partnership, or corporation, including subsidiaries, conglomerates, affiliates, parent corporations, publicly-traded companies that own 10% or more of a party's stock, and other identifiable entitles related to any party in this case, that has or may not have an interest in the outcome of this particular case or appeal:

- **Adams, Jr., The Honorable Henry Lee** – U.S. District Judge in proceeding below

- **Bartlett, Loeb, Hinds & Thompson, PLLC** – counsel for Defendants/Appellees

- **Busey, Stephen D**. – counsel for Third-Party Plaintiff/Appellant

- **Doucette, Allison** - counsel for Defendants/Appellees

- **Steven Gieseler** – counsel for Defendants/Appellees

- **Houston Pipe Line Company, LP**, Defendant/Appellee

- **Houston Pipe Line Company, LP** is a Delaware limited partnership. The parent entity of Pipe Line is HPL Consolidation LP, a Delaware limited partnership.

- **HPL GP, LLC**, Defendant/Appellee

- **HPL GP, LLC** is a Delaware limited liability company. The parent entity of HPL GP, LLC is HPL Consolidation LP, a Delaware limited partnership.

- There is no publicly held corporation owning 10% or more of HPL GP, LLC or of HPL Consolidation LP.

- There is no publicly held corporation owning 10% or more of Houston Pipe Line Company, LP or of HPL Consolidation LP.

- **Loeb, Ethan** – counsel for Defendants/Appellees

- **Schlesinger, Harvey** – U.S. District Judge in proceeding below

- **Smith, Hulsey & Busey –** counsel for Third-Party Plaintiff/Appellant

- **Thomas, John R** – counsel for Third-Party Plaintiff/Appellant

## STATEMENT REGARDING ORAL ARGUMENT

As will be demonstrated herein, the factual record of this case is thorough and complete, and will not require further clarification. Moreover, the case's legal issues are limited in scope and clearly delineated. Based on these factors, Appellees respectfully submit that this Court has all the information it needs to decide the one legal question presented in this case. As such, oral argument will provide the Court with no further insight, and will instead prove an inefficient use of the Court's limited time and resources.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ............................................ iv

TABLE OF CONTENTS.....................................................................................v

TABLE OF AUTHORITIES ........................................................................... vii

JURISDICTIONAL STATEMENT ..................................................................... ix

ISSUES PRESENTED........................................................................................x

STATEMENT OF THE CASE...........................................................................1

   I.   The Course of the Proceedings Below ...............................................1

   II.   Relevant Facts ....................................................................................4

      a.   The Third-Party Complaint .........................................................4

      b.   The First Motion to Voluntarily Dismiss ....................................5

      c.   Discovery Reveals Continental's Successor Claims...................8

      d.   The Summary Judgment Motion................................................10

      e.   The Second Motion to Dismiss .................................................11

      f.   The Motion for Sanctions..........................................................13

      g.   The Sanctions Order ..................................................................13

      h.   The Summary Judgment Order and Fee Motion........................14

      i.   The Court's Fee Motion Order...................................................15

   III.   Standard of Review .........................................................................17

SUMMARY OF ARGUMENT .........................................................................19

ARGUMENT ....................................................................................................21

   I.   The Initial Brief Makes No Effort to Demonstrate the District Court Abused its Discretion in Denying the First Motion to Voluntarily Dismiss ....................21

   II.   On its Merits, the District Court's Decision to Deny the First Motion to Voluntarily Dismiss Was Correct........................................................................23

   III.   Continental's Argument Has No Basis in the Record of this Case............26

   IV.   Continental has Waived the Remainder of Potential Issues on Appeal by

Failing to Substantively Argue Them in the Initial Brief .................................... 30

CONCLUSION ......................................................................................... 33

CERTIFICATE OF COMPLIANCE ...................................................... 35

CERTIFICATE OF SERVICE ............................................................... 36

# TABLE OF AUTHORITIES

**Page(s)**

## *Cases*

*Alamance Industries, Inc. v. Filene's*,
    291 F.2d 142 (1st Cir.) ............................................................ 24

*Allstate Indemnity Co.*,
    2022 WL 1686910 (11th Cir. May 26, 2022) .......................... 25

*Arias v. Cameron*,
    776 F.3d 1262 (11th Cir. 2015).......................................... 19, 23, 25

*Barnes v. Dalton*,
    158 F.3d 1212 (11th Cir. 1998).............................................. 18, 33

*Fisher v. Puerto Rico Marine Mgmt., Inc.*,
    940 F.2d 1502 (11th Cir. 1991).......................................... 19, 23, 24

*Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr S.A.*,
    377 F.3d 1164 (11th Cir. 2004).............................................. 20, 31

*Kotzen v. Levine*,
    678 F.2d 140 (11th Cir. 1982).................................................... 24

*LeCompte v. Mr. Chip, Inc.*,
    528 F.2d 601 (5th Cir. 1976)...................................................... 24

*McCants v. Ford Motor Co.*,
    781 F.2d 855 (11th Cir. 1986).......................................... 20, 24, 25

*Negron v. City of Miami Beach*,
    113 F.3d 1563 (11th Cir. 1997).................................................. 17

*Negron*,
    115 F.3d.................................................................................... 23

*Sleeth v. Comm'r of Internal Revenue*,
    991 F.3d 1201 (11th Cir. 2021).................................................. 21

*Tallahassee Memorial Reg. Med. Ctr. v. Bowen*,
   815 F.2d 1425 (11th Cir. 1987)................................................................. 31

*U.S. v. Buckles*,
   843 F.2d 469 (11th Cir. 1988)................................................................. 22

*U.S. v. Frazier*,
   387 F.3d 1244 (11th Cir. 2004)................................................................ 22

*Yellow Pages Photos, Inc. v. Ziplocal, LP*,
   846 F.3d 1159 (11th Cir. 2017)................................................................ 22

### Statutes

28 U.S.C. §1821 ...................................................................................... 15

28 U.S.C. §1927...................................................................... 2, 12, 13

Florida Statutes §376.313(6)............................................................ 3, 15, 17

Section 373.313(6), Florida Statutes...................................................... 4

### Rules

Fed. R. App. P. 4(a)(1)(A) ...................................................................... 26

Fed. R. App. P. 4(a)(2)....................................................................... 26, 29

Federal Rule of Civil Procedure 41(a)(2) ................................................ 19, 23, 24

## <u>JURISDICTIONAL STATEMENT</u>

Appellees Houston Pipe Line Company, L.P. and HPL GP, LLC (together, "Houston") concur with Appellant Continental Holdings, Inc. ("Continental") that the Court has jurisdiction to hear this appeal.[1]

---

[1] *See* this Court's order entered October 26, 2022, discussing the Court's intentions regarding the jurisdictional question involved in this case.

## <u>ISSUES PRESENTED</u>

Pursuant to Eleventh Circuit Rule 28-2, Houston Pipe Line provides this objective statement of the issues:

1.    Whether the District Court abused its discretion in denying Continental's motion to voluntarily dismiss its third-party complaint against Houston.

2.    Whether the remainder of the appellate issues, if any, over which this Court would otherwise have jurisdiction have been waived by Continental, as they were not substantively argued in Continental's Initial Brief.

## STATEMENT OF THE CASE

### I.    The Course of the Proceedings Below

On September 3, 2014, the City of Jacksonville filed claims against Appellant Continental Holdings, Inc. ("Continental"), and others, Jacksonville Hospitality Holdings, LP, and Shoppes of Lakeside, Inc., asserting claims under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"). (Doc. 52, as amended Doc. 84).[2] The City sought damages related to environmental contamination emanating from a manufactured gas plant owned and operated by the Jacksonville Gas Company until it was closed in the early 1900s. (Doc. 52, p.5, ¶16). Through various mergers and a name change, Jacksonville Gas Company became the Florida Gas Company. The City alleged that Continental is the successor to the Florida Gas Company and thus liable under CERCLA for the environmental hazards located on the former manufactured gas plant site. (Doc. 52, p.8, ¶31; p.10, ¶39; p.12, ¶48).

On April 6, 2015, Continental filed a third-party complaint against Houston Pipe Line, Greif, Inc., JEA, f/k/a Jacksonville Electric Authority, Texaco, Inc., and Claude Nolan Cadillac, Inc., arguing that Houston or another entity (not Continental) is the true successor to Florida Gas Company, and therefore subject to liability for clean-up costs. (Doc. 96, amended Doc. 97).[3] On November 13, 2015, Continental

---

[2] The City added Continental as a defendant to its Second Amended Complaint. (Doc. 87).
[3] The other third-party defendants were subsequently dismissed from the litigation.

filed a motion to voluntarily dismiss its claims against Houston, without prejudice (the "First Motion to Voluntarily Dismiss"). (Doc. 184). Houston objected to the motion to voluntarily dismiss. (Doc. 190). After a hearing, the Honorable Judge Henry Lee Adams, Jr. denied the motion (Doc. 204).

Thereafter, on September 30, 2016, Continental filed its second motion to dismiss without prejudice (the "Second Motion to Dismiss"). (Doc. 282). Houston again objected, and the motion was denied (Doc. 286; Doc. 294).

On October 13, 2016, Houston filed its Motion for Sanctions against Continental, seeking recovery of fees and costs pursuant to 28 U.S.C. §1927 and the Court's inherent authority (the "Motion for Sanctions"). (Doc. 285). On March 27, 2017, Houston filed its Motion for Summary Judgment (Doc. 299), seeking summary judgment in its favor on the basis that Houston was not the successor to the Florida Gas Company, and that Continental had in fact represented itself as Florida Gas Company's successor in four substantial ways: (1) when seeking payments from insurers for environmental claims; (2) in settlement agreements with such insurers; (3) on stock certificates; and (4) in a statement made by a lawyer representing Continental in a state court case. (Doc. 299, pp.2-7).

On September 22, 2017, the District Court granted Houston's Motion for Sanctions. (Doc. 306). Thereafter, on September 27, 2018, the District Court granted Houston's Motion for Summary Judgment, and directed entry of judgment in favor

of Houston and against Continental on its Third-Party Complaint (the "Summary Judgment Order"). (Doc. 315, p. 25).

On October 12, 2018, Houston timely filed its Bill of Costs (Doc. 320) and Motion for Attorneys' Fees and Costs Pursuant to Florida Statutes §376.313(6), Motion to Determine Amount of Fees and Costs Pursuant to Prior Sanctions Order, and Supporting Memorandum of Law (the "Fee Motion"). (Doc. 321). Continental filed an immediate appeal based upon the Summary Judgment Order with the Eleventh Circuit, which was dismissed by this Court for lack of jurisdiction on February 26, 2019.

On October 6, 2021, the District Court, now with the Honorable Judge Harvey Schlesinger presiding, held a hearing on the Fee Motion and Continental's objection to the same. After the hearing, the District Court directed the parties to jointly move to dismiss the remaining counterclaims filed by Houston, which were already substantively addressed in the Summary Judgment Order. (Doc. 386). The parties complied on October 25, 2021. (Doc. 387).

Upon entry of the order dismissing Houston's remaining counterclaims against Continental with prejudice (Doc. 388), Continental filed another appeal of the Summary Judgment Order, along with the orders denying the First Motion to Voluntarily Dismiss, Second Motion to Dismiss, and granting Houston's Motion for

Sanctions. (Doc. 389). This appeal was likewise dismissed as premature by this Court.

On June 22, 2022, the District Court granted the Fee Motion in part, adjudicating Continental's liability for fees based upon the Sanctions Order and under the prevailing party provision of Section 373.313(6), Florida Statutes. (Doc. 401). The District Court concluded

> A review of the sanctions Order leads the undersigned to find that not [only] was [Continental's] Complaint frivolous, this was indeed an ***exceptional case***. The Sanctions Order noted numerous instances when Continental presented itself as the relevant gas company's successor and made representations to certain insurance companies regarding same. Judge Adams observed these representations resulted in Continental receiving millions of dollars as the successor in interest. Despite this reality, Continental sued Houston in this court, asserting Houston was the relevant successor.

(Doc. 401, p.11) (emphasis added). Rather than conclude this matter below and simply pay the amount of money that it is now obligated to pay for the "exceptionally" frivolous case described herein, Continental now seeks relief from this Court by contending the District Court "abused its discretion." (Doc. 402).

## II.    Relevant Facts

### a.  The Third-Party Complaint

In its Third-Party Complaint, Continental took the position that Houston, not Continental, was responsible for the environmental contamination alleged by the City because Houston, not Continental, was the successor to the Florida Gas Company. (Doc. 97). Houston answered the Third-Party Complaint, asserting it was

not the successor to Florida Gas Company, and therefore had no liability. (Doc. 138).

Houston also filed a reciprocal counterclaim against Continental, asserting that

Continental had successor liability, not Houston. (Doc. 138).

The filings of the City's Complaint and the Third-Party Complaint were not

the first time Continental's successor status was at issue. Rather, Continental had

been sued as the alleged successor to the Florida Gas Company on at least three

occasions, with the litigation settling just before adjudication of the question of the

successor issue. (Doc. 221, (Hr'g Tr. 14:16-15:17)).[4] The parties immediately began

discovery as to the true successor and the extent of liability for the alleged

environmental contamination.

### b. The First Motion to Voluntarily Dismiss

In November 2015, Continental first tried to dismiss Houston with prejudice

through the filing of the First Motion to Voluntarily Dismiss, asserting that it was

doing so to focus on "its defense of the City's claims against it and prosecution of

its counterclaims against the City ***and to collect additional evidence regarding the***

***Houston Defendants' liability.***" (Doc. 184, p.3) (emphasis added). Houston

opposed the First Motion to Voluntarily Dismiss, contending that it would be

prejudiced by not participating in discovery and at trial to confirm, by defense, that

---

[4] Houston cites to hearing transcripts by reference to the Lower Court's docket number, and line and page assigned by the court reporter.

Houston was not the successor to the Florida Gas Company. (Doc. 190). As argued by Houston, a "without prejudice" dismissal would merely have allowed Continental to continue to claim in the instant litigation, and in future litigation involving other sites, that Houston, instead of Continental, was the successor to the Florida Gas Company. (*Id*.).

On January 26, 2016, the District Court held a hearing on the First Motion to Voluntarily Dismiss. In its Initial Brief, Continental now asserts that the District Court denied Continental's First Motion to Voluntarily Dismiss on the following basis: "Well, I got the feeling, I don't have anything to support that, that if I grant your motion to dismiss, they are going to show up again somewhere in this case, in this case or some other case somewhere else. That's my feeling about it." (Doc. 221 (Hr'g Tr. 44:6-11)); Initial Brief pp.16-17.

Continental conveniently leaves out the balance of the relevant transcript, which includes Continental's counsel stating, just after the judge's colloquy, "Well, Your Honor, I can't tell you today as I stand here that would be because of Continental or some other party, that is always a possibility that they can be sued, yes." (Doc. 221, (Hr'g Tr. 44:12-15)). Indeed, the District Court's observation that Continental excerpts in the Initial Brief was made only *after* Continental's counsel admitted that Continental did not yet have enough evidence to prevail on its claims against Houston:

> No, we can proceed with discovery, we have served discovery on the Houston defendants and they have not yet, because of the timing of its being served and the extensions that have been granted, responded. So you may tell me, Ms. McGuire, the Houston defendants are going to stay in and I'll say fine Your Honor, we'll continue with our discovery, and my suspicion is that we're going to find evidence that would allow us to make our claim against the Houston Pipe Line Company that it is, in fact, the successor. That's why we've served the discovery. But as I stand here today and on the day that the motion to voluntarily dismiss the Houston Defendants was filed that discovery had not been answered. With respect to judicial economy, again, I think the issue — we've talked about the issue and I don't think that this is going to affected in one way or the other.

(Doc. 221, (Hr'g Tr. 43:11-44:5)). Continental's counsel also explicitly admitted that Continental would still try the issue of Houston's liability, *regardless of whether Houston remained as a party to the action*:

> [T]he thing I would like to point out is that even if Houston Pipe Line is dismissed as a third-party defendant in this case, the issue as to who the correct corporate successor to the Jacksonville Gas Company is will necessarily involve identifying that part. And so issues as to Houston Pipe Line may be tried as to the affirmative defense that CHI has asserted. I don't think that by dismissing them that takes out of the court's ability to decide that issue.

(Doc. 221, (Hr'g Tr., 33:9-19)).

The District Court took the First Motion to Voluntarily Dismiss under advisement and entered an order on March 7, 2016, finding:

> As to Continental's Motion to Dismiss the claims against the Houston Defendants (Houston), Houston objects based upon its position that it would be prejudiced if a successor liability determination was made during the pendency of this litigation without its active participation.

> The Court agrees that Houston has important interests at stake and will not dismiss the claims against it at this time.

(Doc. 204, pp. 1-2).

### c.  Discovery Reveals Continental's Successor Claims

Following the denial of the First Motion to Voluntarily Dismiss, Houston set about to conduct additional discovery, including discovery relating to insurance claims and subsequent settlements that would ultimately confirm Continental's frivolous position that some other entity was responsible for the City of Jacksonville's CERCLA claims. From January 2016 to October 2017, Houston prepared for, took, and participated in approximately eighteen fact and corporate representative depositions, including those depositions concerning Continental's claims about successorship to the Florida Gas Company, and the historical corporate successorship going back to the original Jacksonville Gas Company. (Doc. 286-1, pp.1-2). The other depositions principally concerned various environmental issues pertaining to the subject contaminated site, including causation and any necessary remediation. (Doc. 286-1, pp.1-2). In addition, the parties to the litigation collectively retained eleven experts, including three expert witnesses for Houston alone. (Doc. 286-1, pp.1-2). These experts (Richard Lisner, Thomas Sponsel, and Jay Vandven) were necessitated by Continental's continuation of its claims against Houston. Houston was also required to analyze the expert reports prepared on behalf of the City and Continental. (Doc. 286-1, pp.1-2). These expert reports concerned

issues of corporate successorship and complicated environmental causation and remediation issues. Furthermore, Houston served extensive written discovery. (Doc. 286-1, pp.1-2).

However, Continental did not willingly engage in such discovery. Instead, Continental resisted discovery regarding Continental's successorship status, resulting in the City and Houston filing a joint motion to compel directed to Continental (Doc. 196), and Continental's corresponding motion for protective order. (Doc. 213). Continental also sought to quash Houston's subpoenas served on third parties, including insurers, requesting information pertinent to Continental's prior representations on its successor status. (Doc. 239).

Houston ultimately succeeded in obtaining the required discovery, with Magistrate Judge Monte Richardson issuing orders on June 23, 2016 (Doc. 243), and July 5, 2016 (Doc. 251), rejecting Continental's efforts to conceal the relevant documents, and recognizing that "whether CHI (or some other entity) is the corporate successor to the Florida Gas Company is . . . [a] central liability issue in this case." (Doc. 251; Doc. 243, p.8).

The Court-ordered document production revealed multiple representations by Continental to third parties that Continental (rather than Houston) was indeed the successor to the Florida Gas Company. These written representations that were available to Continental before it filed its third party complaint against Houston, as

described more fully below, confirmed that from 2002 to 2008, Continental successfully represented to various insurance companies that Continental was the successor to Florida Gas Company. Those representations allowed Continental to collect more than $4,000,000 in proceeds under insurance policies that were issued to the Florida Gas Company. (Doc. 286, p.4). It was only after Continental collected millions of dollars in proceeds, and exhausted the funds available, from all available insurance policies that it took the position that Houston was the successor to the Florida Gas Company.

### d. The Summary Judgment Motion

On September 1, 2016, Houston filed its Motion for Summary Judgment seeking to dismiss all of Continental's claims against Houston, and to confirm once and for all that Continental, not Houston, was the successor to Florida Gas Company. (Doc. 299). In support of its Motion for Summary Judgment, Houston submitted evidence that Continental consistently represented itself as the successor to the Florida Gas Company where it suited its purposes, including for insurance purposes. (Doc. 299-2 through Doc. 299-11). As Houston argued it, Continental had either (i) committed insurance fraud by collecting proceeds to which it was not entitled or (ii) committed a fraud on the District Court by asserting that Houston was the successor to the Florida Gas Company. In support of this "either/or" position, Houston also submitted evidence that Continental accepted settlement payments as the successor

to the Florida Gas Company (Doc. 299-15) and that Continental had actually represented its successor status in prior judicial proceedings (Doc. 299-16). Finally, Houston submitted evidence that it was not successor to the Florida Gas Company. (Doc. 299). Continental opposed Houston's Motion for Summary Judgment, arguing that there were questions of fact that remained as to whether Houston was the liable successor. (Doc. 302).[5]

### e.  The Second Motion to Dismiss

On September 30, 2016, after the filing of Houston's Motion for Summary Judgment, Continental filed a second motion to dismiss its Third-Party Complaint against Houston, again without prejudice (the "Second Motion to Dismiss"). (Doc. 282). Houston informed Continental that it would not accept anything less than dismissal with prejudice, given Continental's prior representations and, even more recently, Continental's arguments in support of its own motion for summary judgment. Continental refused. (Doc. 286-1, ¶9). Instead, Continental stated that it would only agree to dismissal with prejudice if Houston paid a settlement amount to Continental (Doc. 286-1, ¶9).

As it argued in opposition to the Second Motion to Dismiss, Houston believed that the only purpose of dismissal without prejudice was to allow Continental to

---

[5] In its own Motion for Partial Summary Judgment, Continental argued that neither Continental nor Houston were liable, and instead an Enron-related entity was responsible for any CERCLA liability associated with the gas plant. (Doc. 267, pp.2-3).

point the finger to an "empty" Houston (or other non-party) chair at trial, and then to continue to claim in future litigation that Houston is in fact the successor to the Florida Gas Company. (Doc. 286, p.5). In addition, the Second Motion for Dismiss was filed only after Houston served a notice pursuant to Rule 11 of the Federal Rules of Civil Procedure, including a motion that also sought relief in the form of sanctions under 28 U.S.C. §1927 and the District Court's inherent authority.

Continental only filed the Second Motion to Dismiss: (i) after Houston had successfully engaged in extensive motion practice to obtain documents showing Continental's admissions to third parties that it is the successor to Florida Gas Company; (ii) after the parties had taken approximately thirty depositions; (iii) after Houston had engaged expert witnesses and engaged in extensive expert witness discovery; and (iv) after Houston filed its motion for summary judgment against Continental, highlighting Continental's admissions over the last several decades which it now attempted to conceal from the District Court. (Doc. 286). As set forth in Houston's response, between the denial of the First Motion to Voluntarily Dismiss and the filing of the Second Motion to Dismiss, Houston was forced to expend more than $1.4 million in attorney's fees simply to get to the bottom of the successorship issue—one that Continental had known all along but actively worked to conceal from Houston and the District Court. (Doc. 286; Doc. 286-1). The District Court denied the Second Motion to Dismiss. (Doc. 294).

### f.  The Motion for Sanctions

On October 13, 2016, Houston filed its Motion for Sanctions under 28 U.S.C. §1927 and the District Court's inherent authority. (Doc. 285). In the Motion for Sanctions, Houston again detailed Continental's extensive prior admissions as to its successor status, its discovery objections intended to avoid uncovering such admissions, and its refusal to dismiss Houston with prejudice even though it knew it had no evidence to support the claim against Houston. (Doc. 285). The evidence, as shown the District Court, showed Continental had historically claimed (and concealed from the District Court and Houston) to be the successor to Florida Gas so that it could collect millions in insurance monies.

### g.  The Sanctions Order

On September 22, 2017, the District Court granted Houston's Motion for Sanctions (the "Sanctions Order"). In the Sanctions Order, the District Court held that Continental represented over many years that it was the successor to the Florida Gas Company, *and* that Continental unreasonably multiplied the proceedings in the District Court. (Doc. 306, p.6). As further held by the District Court, not only was the claim against Houston meritless from the start due to Continental's prior representations, but Continental also vigorously and improperly opposed any effort to obtain discovery regarding Continental's past admissions that it is the Florida Gas Company's successor. (Doc. 306, p.6). Moreover, the District Court noted that one

basis of Houston's Motion for Sanctions was Continental's First Motion to Voluntarily Dismiss itself, where Continental proposed to dismiss Houston from the case only under the condition that the dismissal was without prejudice. The Court, in the Sanctions Order, wrote:

> Continental's response emphasizes that as early as November 2015 it tried to voluntarily dismiss Houston, but Houston fought to stay in this action. However, the Court notes that Houston objected to the fact that the proposed dismissal was without prejudice, arguing that it would prejudice Houston because Continental could avoid an adverse determination in this case and then refile its claims.

(Doc. 306, pp.6-7, n.3). The District Court found that Houston was "entitled to recover reasonable attorneys fees and costs from Continental and its attorneys incurred by Houston in defending against Continental's Third-Party Complaint" in an amount to be determined at a later date. (Doc. 306, p.9).

### h.  The Summary Judgment Order and Fee Motion

On September 27, 2018, the District Court entered its Summary Judgment Order, finding no issue of material fact regarding Continental's status as the successor-in-interest regarding the environmental contamination liability. (Doc. 315). The District Court directed entry of a judgment in favor of Houston and against Continental. (Doc. 315, p.26). On October 12, 2018, Houston timely filed its Fee Motion, seeking a blanket award of attorneys' fees and costs incurred in connection with defending against the Third-Party Complaint as a whole. (Doc. 321). In addition, Houston sought a finding that it was entitled to recovery of such fees and

costs under Section 376.313(6) of the Florida Statutes, based upon the fact that Continental's Third-Party Complaint was "not in the public interest." Houston filed a Bill of Costs for those expenses appropriately taxable under 28 U.S.C. §1821. (Doc. 320).

Continental objected to the Fee Motion, arguing primarily that the fees and costs incurred by Houston should be capped as of the First Motion to Voluntarily Dismiss. (Doc. 328). The District Court held a hearing on the Fee Motion on October 6, 2021.

### i. The Court's Fee Motion Order

On June 22, 2022, the District Court entered its Order on Houston's Fee Motion. (Doc. 401) (the "Fee Order"). As identified in the Fee Order, the parties stipulated to certain amounts of fees and costs (with the exception of travel costs), as follows: (1) as of November 13, 2015, the date that Continental filed the First Motion to Voluntarily Dismiss without prejudice; (2) as of the Fee Motion; and (3) as of the date of the hearing on the Fee Motion. (Doc. 381). Accordingly, the primary issue at the hearing was not the reasonableness of the fees, but the cut-off date for Houston's fee award in accordance with the Sanctions Order. (Doc. 401, p.7). In the Fee Order, the District Court detailed the parties' arguments, noting that Houston previously identified that it would suffer prejudice if Continental were permitted to dismiss its claims against Houston without prejudice. (Doc. 401, p.8). Further, the

District Court noted that Houston specifically asked for it, and for Continental, to dismiss the case with prejudice, to avoid such a prejudicial "empty chair" scenario. (Doc. 401, p.8). The District Court also found that despite these facts, Continental misled the court by arguing that it was *Houston* that wanted to keep litigating, even though Continental "did not offer a dismissal with prejudice either in its written motion or at the hearing." (Doc. 401, p.9).

The District Court, Judge Schlesinger presiding, determined that "Judge Adams did not decide that Continental engaged in *some* bad faith conduct while prosecuting a legitimate complaint. Instead, he found Continental prosecuted a complaint that was *brought* in bad faith." (Doc. 401, p.10). The District Court went on to hold:

> A review of the sanctions Order leads the undersigned to find that not [only] was the Third-Party Complaint frivolous, this was indeed an exceptional case. The Sanctions Order noted numerous instances when Continental presented itself as the relevant gas company's successor and made representations to certain insurance companies regarding same. Judge Adams observed these representations resulted in Continental receiving millions of dollars as the successor in interest. Despite this reality, Continental sued Houston in this court, asserting Houston was the relevant successor.

(Doc. 401, p. 11).

The District Court ultimately concluded that Houston was entitled to the hours reasonably spent defending against the Third-Party Complaint to completion, as those hours were directly attributable to Continental's bad faith conduct. (Doc. 401,

p.12). Accordingly, the District Court awarded fees through October 12, 2018. (Doc. 401, p.12.)

In addition, the District Court found that Houston was entitled to an award of fees and costs pursuant to Florida Statutes Section 376.313(6), as such an award was "in the public interest." In so doing, the District Court accepted Houston's interpretation of the statute as analogous to the Clean Water Act, where an award of fees to a successful defendant is in the public interest where litigation is "frivolous, unreasonable, or groundless or [when] the plaintiff continued to litigate after it clearly became so." (Doc. 401, p.13). The District Court found that because the Third-Party Complaint was brought in bad faith, it was "clearly groundless and without foundation" and thus an award of fees and costs under Section 376.313(6), Florida Statutes was appropriate. (Doc. 401, p.13). On July 25, 2022, the District Court entered its Judgment in favor of Houston, and against Continental, awarding Houston $1,171,277.90 in attorneys' fees, and $308,218.75 in costs, for a total amount of $1,479,496.65. (Doc. 405).

## III.  Standard of Review

This Court reviews, for abuse of discretion, a district Court's decision whether to grant voluntary dismissal of a claim. *Negron v. City of Miami Beach*, 113 F.3d 1563, 1566 (11th Cir. 1997).

To the extent this Court finds the question of the District Court's granting of

Houston's Motion for Sanctions properly before this Court (*see* Argument, Part II, below), the Court would review the Sanctions Order under an abuse of discretion standard. *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998).

# SUMMARY OF ARGUMENT

Federal Rule of Civil Procedure 41(a)(2) provides that after a defendant has served a responsive pleading, "an action *may* be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." (emphasis added). The judicial discretion ("may") inherent in Rule 41(a)(2) is supported by this Court's opinions applying the Rule, which unanimously hold that "voluntary dismissal without prejudice is not a matter of right," *Fisher v. Puerto Rico Marine Mgmt., Inc.*, 940 F.2d 1502, 1502 (11th Cir. 1991), and that "[t]he decision of whether to grant a voluntary dismissal pursuant to Rule 41(a)(2), Fed. R. Civ. P., falls within the sound discretion of the district court." *Arias v. Cameron*, 776 F.3d 1262, 1268 (11th Cir. 2015).

This Court will not vacate an order denying a motion to voluntarily dismiss absent a showing of the District Court's abuse of its discretion. *Id.* Continental has made no such demonstration in its Initial Brief; in fact, it has not even made an attempt. Instead, Continental's cursory argument is replete with references to inapposite standards, and reflects a curious reluctance to address the contents of the order which Continental now appeals. This assuredly is because the District Court's order satisfies all controlling standards governing the exercise of its discretion.

In that order, denying Continental's motion to voluntarily dismiss its third-party claim against Houston without prejudice, the District Court cited the prejudice

that would result from such a dismissal, and Houston's "substantial interests" in remaining a party to the litigation. In its response opposing the First Motion to Dismiss, and at the hearing on the motion, Houston had argued that its dismissal from the case would allow Continental to pursue an "empty chair" strategy of, functionally, trying the issue of Houston's liability in absentia, for use both in the case below and in future litigation. The District Court, mindful of this Court's holding that "a district court considering a motion for dismissal without prejudice should be in mind principally the interests of the defendant, for it is the defendant's position that the court should protect," *McCants v. Ford Motor Co.*, 781 F.2d 855, 856 (11th Cir. 1986), clearly agreed, and properly exercised its discretion by declining to dismiss Houston from the case.

This Court should affirm the District Court's order. Moreover, as the remainder of the Initial Brief's ostensible argument consists only of a single paragraph and a footnote purporting to incorporate arguments made in the District Court as to subsequent court orders, this Court should deem those issues waived and not properly at issue in this appeal. *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr S.A.*, 377 F.3d 1164, 1167 n.4 (11th Cir. 2004).

## **ARGUMENT**

Despite this case's long history in the District Court, Continental's substantive argument is exceedingly slight (comprising fewer than eight pages of the Initial Brief) and limited in focus. The sole substantive issue before this Court is whether the District Court abused its discretion in denying Continental's First Motion to Voluntarily Dismiss. For the reasons set forth below, the answer to that question plainly is "no".

**I.    The Initial Brief Makes No Effort to Demonstrate the District Court Abused its Discretion in Denying the First Motion to Voluntarily Dismiss**

In several places in the Initial Brief, Continental recites the proper standard (abuse of discretion) governing this Court's review of the District Court's order denying the First Motion to Voluntarily Dismiss. Initial Brief p.2; p.9; p.11. Yet, with regard to the controlling abuse of discretion standard, that is as far as the Initial Brief goes. Continental obviously *disagrees* with the District Court's denial of the First Motion to Voluntarily Dismiss, but the Initial Brief makes no attempt, at all, to explain how that denial constitutes an abuse of discretion.

This, surely, is because the abuse of discretion standard does Continental no favors in this case. This Court has described an abuse of discretion as occurring only where the district court "applies an incorrect legal standard, relies on clearly erroneous factual findings, or commits a clear error of judgment." *Sleeth v. Comm'r*

*of Internal Revenue*, 991 F.3d 1201, 1204 (11th Cir. 2021) (internal citation omitted). This Court also explained that the abuse of discretion standard "necessarily implies a range of choices," and that it will affirm a district court's decision "even if we would have decided the other way had it been our choice." *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 846 F.3d 1159, 1163 (11th Cir. 2017) (internal citations omitted). In other contexts, this Court has written that it applies the abuse of discretion standard mindful that "deference [ ] is the hallmark" of such a review, and that the standard affords the district court "considerable leeway." *U.S. v. Frazier*, 387 F.3d 1244, 1258 (11th Cir. 2004). Therefore, reversal under the abuse of discretion standard is not warranted unless the district court's decision is "manifestly erroneous," *id.*, or "arbitrary or unreasonable," *U.S. v. Buckles*, 843 F.2d 469, 471 (11th Cir. 1988).

To be clear, the issue is not that Continental did not make an adequate or convincing showing, in the Initial Brief, that the District Court's denial of the First Motion to Voluntarily Dismiss constitutes an abuse of discretion within the framework illustrated above. Rather, it is evident on the face of the Initial Brief that Continental did not even attempt to make such a showing at all. That, on its own, warrants this Court's rejection of Continental's disagreeing with the District Court's decision, and an affirmation of the order denying the First Motion to Voluntarily Dismiss.

## II. On its Merits, the District Court's Decision to Deny the First Motion to Voluntarily Dismiss Was Correct

Even were the District Court's order to deny Continental's First Motion to Voluntarily Dismiss not afforded such a deferential standard of review, Continental still would not be entitled to the relief demanded in the Initial Brief. On its substantive merits, the District Court's decision to deny voluntary dismissal was the correct one, pursuant to the facts before the court and the law controlling its consideration of the motion.

The Federal Rules of Civil Procedure provide that "an action *may* be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2) (emphasis added). The Rule's use of the term "may," rather than "shall," is indicative of the discretion afforded the District Court in permitting such a voluntary dismissal, since "[t]he decision of whether to grant a voluntary dismissal pursuant to Rule 41(a)(2), Fed. R. Civ. P., falls within the sound discretion of the district court." *Arias v. Cameron*, 776 F.3d 1262, 1268 (11th Cir. 2015); *see Negron*, 115 F.3d at 1571.

This Court has been succinct in elaborating even further on the district court's discretion, holding: "A voluntary dismissal without prejudice is not a matter of right." *Fisher v. Puerto Rico Marine Mgmt., Inc.*, 940 F.2d 1502, 1502 (11th Cir. 1991). When exercising its discretion in considering a motion for voluntary dismissal without prejudice, the district court is obliged to "keep in mind the interests

of the defendant, for Rule 41(a)(2) exists chiefly for the protection of defendants."
*Id.* at 1503. This Court has further explained the paramount importance of the
defendant's interests in considering dismissals without prejudice under Federal Rule
of Civil Procedure 41(a)(2):

> The purpose of the rule is primarily to prevent voluntary dismissals
> which unfairly affect the other side, and to permit the imposition of
> curative conditions. *Alamance Industries, Inc. v. Filene's,* 291 F.2d
> 142, 146 (1st Cir.), *cert. denied,* 368 U.S. 831, 82 S.Ct. 53, 7 L.Ed.2d
> 33 (1961). Thus a district court considering a motion for dismissal
> without prejudice should bear in mind principally the interests of the
> defendant, for it is the defendant's position that the court should
> protect. *LeCompte v. Mr. Chip, Inc.,* 528 F.2d 601, 604 (5th Cir. 1976).

*McCants v. Ford Motor Co.*, 781 F.2d 855, 856 (11th Cir. 1986).

Continental ignores these controlling standards in the Initial Brief, in favor of
a repeated recital of the assertion that voluntary dismissal generally "should be
allowed unless the defendant will suffer some plain prejudice other than the mere
prospect of a second law suit." *See* Initial Brief p.11 (quoting *Kotzen v. Levine*, 678
F.2d 140 (11th Cir. 1982)). But this rote recital does absolutely nothing to address
the actual issues before the District Court in considering the First Motion to
Voluntarily Dismiss, where the threatened prejudice was not the "mere prospect of
a second law suit," but the danger of allowing Continental to try the pending lawsuit
against Houston in absentia, using the "empty chair" strategy, and imposing liability
on Houston without its ability to provide a defense.    Even a cursory review of
Houston's response in opposition to the First Motion to Voluntarily Dismiss (Doc.

190) makes this abundantly clear, and so Continental's robotic reliance on the "mere prospect of a second lawsuit" language borders on a non sequitur.

That language also does not come near a full description of the law governing the District Court's determination of such prejudice. In *McCants*, for example, this Court explained that an inquiry into potential prejudice against a defendant, related to a voluntary dismissal without prejudice, requires the district court to undertake a holistic review of the case's facts, and to "weigh the relevant equities and do justice between the parties in each case," and "to consider the crucial question of whether the defendant [would] lose any substantial right by the dismissal." *McCants*, 781 F.2d at 856-57; *see also Arias*, 776 F.3d at 1268-69 (quoting *McCants*); *Dobbs. v. Allstate Indemnity Co.*, 2022 WL 1686910 (11th Cir. May 26, 2022) (affirming denial of motion to voluntarily dismiss, on grounds of "relevant equities" and "justice" between the parties).

In this case, the District Court did precisely what this Court required of it under the foregoing opinions. The transcript of the hearing on the First Motion to Voluntarily Dismiss reveals the court's extensive inquiry into the question of prejudice to Houston, including prejudice resulting from Continental's stated intention to pursue its "empty chair" strategy once Houston was dismissed from the case. (Doc. 221, (Hr'g Tr. 34:5-39:13)). The order denying the First Motion to Voluntarily Dismiss further reflects the District Court's considered weighing of the

"relevant equities" and the question of Houston's "substantial rights" put at risk via dismissal without prejudice, including the following passage:

> As to Continental's Motion to Dismiss the claims against the Houston Defendants (Houston), Houston objects based upon its position that it would be prejudiced if a successor liability determination was made during the pendency of this litigation without its active participation. The Court agrees that Houston has important interests at stake and will not dismiss the claims against it at this time.

(Doc. 204, pp. 1-2).

In denying the First Motion to Voluntarily Dismiss, the District Court considered the governing principles of potential prejudice, fairness to the defendant, and the relative equities between the parties. Just because the Initial Brief utterly refuses to acknowledge the issue of Continental's "empty chair" strategy, and the potential for prejudice it threatened, Initial Brief pp.13-15 ("Houston did not identify any legal prejudice"), does not mean the District Court similarly failed to consider it. Proof to the contrary is present on the face of the very order Continental is appealing, excerpted above.

## III.    Continental's Argument Has No Basis in the Record of this Case

It is axiomatic that this Court's civil jurisdiction includes appeals of written orders and judgments of the district courts, not preliminary statements made by judges during hearings. *See* Fed. R. App. P. 4(a)(1)(A) ("In a civil case . . . the notice of appeal required by Rule 3 must be filed with the district court within 30 days after *entry of the judgment or order appealed from*.") (emphasis added); Fed. R. App. P.

4(a)(2) ("A notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry."). The Initial Brief seeks to discard this basic jurisdictional rule—and the plain language of the District Court's order being appealed—and to instead treat mere asides or questions spoken by judge at a hearing as the decisions to be reviewed.

This is, unfortunately, not hyperbole. Though the order denying Continental's First Motion to Voluntarily Dismiss explicitly includes findings related to prejudice and substantive rights precluding such dismissal, the Initial Brief ignores this language and instead bases its argument on two sentences spoken by the District Court judge during the January 26, 2016 hearing.

In the first of these statements, Judge Adams commented to Continental's counsel, on the prospect of the "empty chair" strategy: "Well, I got the feeling, I don't have anything to support that, that if I grant your motion to dismiss, they are going to show up again somewhere in this case, in this case or some other case somewhere else. That's my feeling about it." (Doc. 221 (Hr'g Tr. 44:6-11)). In  its putative argument consisting of five lines, Continental asserts that the words "I don't have anything to support that" mean that the District Court lacked a basis to find prejudice against Houston stemming from voluntary dismissal without prejudice. Initial Brief pp.16-17.

This contention is facially absurd, and not just because of the language contained in the order. Though Continental claims that Judge Adams' comment means the prospect of the "empty chair" strategy was "unsupported speculation," Continental fails to include the fact that immediately following the judge's comment, Continental's own counsel confirmed the possibility that precisely this type of strategy the District Court suspected would be pursued if Houston were dismissed without prejudice, stating: "Well, Your Honor, I can't tell you today as I stand here that would be because of Continental or some other party, that is always a possibility that they can be sued, yes." (Doc. 221, (Hr'g Tr. 44:12-15)). This admission was in line with an earlier, similar statement regarding the "empty chair" strategy, with Continental's counsel admitting:

> [T]he thing I would like to point out is that even if Houston Pipe Line is dismissed as a third-party defendant in this case, the issue as to who the correct corporate successor to the Jacksonville Gas Company is will necessarily involve identifying that part. And so issues as to Houston Pipe Line may be tried as to the affirmative defense that CHI has asserted. I don't think that by dismissing them that takes out of the court's ability to decide that issue.

(Doc. 221, (Hr'g Tr., 33:9-19)). In sum, the prospect of prejudice to Houston, via the "empty chair" strategy, was not the District Court's mere "unsupported speculation"—and Continental's own attorney admitted it.

Improbably, the second judicial statement on which Continental now relies is even less helpful to its case. Part way through the hearing on the First Motion to

Voluntarily Dismiss, Judge Adams engaged Houston's counsel in a colloquy involving the question of prejudice. At one point, Judge Adams commented: "I'm having a hard time following the prejudice." (Doc. 221, (Hr'g Tr. 35:17-18)). Based on that statement, Continental treats this as a binding ruling that the District Court found there would be no prejudice to Houston if it were dismissed from the case. Initial Brief pp.14-15.

The problems with Continental's argument are myriad. First, of course, the judge's statement was not a merits decision, let alone the verbal announcement of a decision within the ambit of Federal Rule of Appellate Procedure 4(a)(2). Even if it were—and again, it's not, and it is not a close question—the comment is plainly contradicted by the plain language of the District Court's order (Doc. 204), which is what's actually before this Court on appeal. More fundamentally, though, Continental's argument ignores the fact that immediately following Judge Adams' statement that was "having a hard time following the prejudice," Houston's counsel proceeded with a response, occupying nearly four pages of the hearing transcript, clarifying for the court exactly why such prejudice existed. (Doc. 221, (Hr'g Tr. 35:19-39:13)).

The Initial Brief's treatment of Judge Adams' comment makes no allowance for any number of scenarios, the most obvious of which—in light of the language of the District Court's written order and the entire transcript of the hearing—is that

Judge Adams was convinced by the argument of Houston's counsel, or similar arguments made later at the hearing. Continental further disregards the possibility that Judge Adams was employing a rhetorical device to help crystallize the issues in his mind. The parlor game of attempting to divine a court's ruling based on questions posed at oral argument, or at a hearing, is one lost by legal observers, journalists, and attorneys on a daily basis. Despite this, Continental now attempts to appeal the nine-word sentence spoken by a federal judge halfway through a hearing, rather than the written order subsequently entered after taking the case under advisement. This Court should reject Continental's argument and affirm the District Court's order.

IV.     **Continental has Waived the Remainder of Potential Issues on Appeal by Failing to Substantively Argue Them in the Initial Brief**

Continental concludes its Initial Brief with a single paragraph, and an accompanying footnote, under the heading "The Court should reverse the District Court's orders entered after the District Court denied Continental's motion to dismiss." Initial Brief p.18. The footnote (p.19, n.7) asserts, with references to approximately one dozen record documents, that the District Court erred in granting Houston's Motion for Summary Judgment and Motion for Sanctions, because "there were issues of fact raised in the record that should have precluded any award of sanctions or entry of a summary judgment for Houston."

This Court's opinions are clear that an appellant waives any issues not presented in its initial brief, or presented in the manner of Part II of Continental's

argument. In *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr S.A.*, 377 F.3d 1164, 1167 n.4 (11th Cir. 2004), for example, this Court rejected the appellant's attempt to incorporate arguments made in the district court by mere reference to documents, in a footnote, deeming those issues waived. This Court found such waiver particularly appropriate where—as here—the issues ostensibly "incorporated" by reference were not specifically included in the appellant's statement of issues. *Id.*; *see* Initial Brief pp.2.

*Four Seasons* is not an outlier; the rule applied by this Court in the *Four Seasons* opinion is, unambiguously, the law in this Circuit. *See*, *e.g., Center v. Sec. Dept. of Homeland Sec., Customs, & Border Protection*, 895  F.3d 1295, 1299 (11th Cir. 2018) (putative argument, raised only in "cursory" fashion and without proper argument or citation to authorities, is waived by appellant); *Tallahassee Memorial Reg. Med. Ctr. v. Bowen*, 815 F.2d 1425, 1445 n.16 (11th Cir. 1987) (argument raised only in footnote in initial brief is waived by appellant).

As such, this Court should deem as waived the entirety of issues referenced in Part II Continental's argument. Among the reasons for this Court's waiver rule is that a contrary standard forces the Court, and the appellee, to "ferret out" the appellant's arguments, "without explaining which ones have merit and where the district court may have erred. *Four Seasons*, 377 F.3d at 1167 n.4. This is precisely the position Houston is left in, with regard to Continental's Part II assertions.

Finally—and without in any way abrogating or (itself) waiving the foregoing argument, Houston notes that *even if* this Court were to vacate the District Court's order denying the First Motion to Dismiss, it would not follow that subsequent orders (including the Sanctions Order and the Fee Order) would be vacated as well. As noted in the Statement of Facts, the District Court sanctioned Continental, pursuant to Section 1927 and the court's inherent authority. The District Court entered the Sanctions Order upon finding that Continental not only had unreasonably multiplied the proceedings, but it had brought the claim against Houston in bad faith, from the very outset of the case. (Doc. 306, p.6). In the Fee Order, the District Court was even more direct in its criticism of Continental's litigation conduct, finding without equivocation that Continental's claim against Houston was "brought in bad faith," (Doc. 401, p.10), and continuing:

> A review of the sanctions Order leads the undersigned to find that not [only] was the Third-Party Complaint frivolous, this was indeed an exceptional case. The Sanctions Order noted numerous instances when Continental presented itself as the relevant gas company's successor and made representations to certain insurance companies regarding same. Judge Adams observed these representations resulted in Continental receiving millions of dollars as the successor in interest. Despite this reality, Continental sued Houston in this court, asserting Houston was the relevant successor.

(Doc. 401, p. 11).

These findings are not addressed, whatsoever, on their merits in the Initial Brief. There is nothing on which to base Continental's suggestion that the District

Court abused its discretion in entering the Sanctions Order, the Fee Order, or any other order following the order denying the First Motion to Dismiss. *See Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998). But even if the dismissal order were to be vacated, *at most* it would follow that this Court should remand the case to the District Court to determine the amount of fees and costs to which Houston still is entitled, since such a finding would not implicate (a) Continental's bringing of the case in bad faith, nor (b) subsequent conduct subjecting Continental to sanctions under Section 1927 and the court's inherent authority.

Houston respectfully submits that the resolution, in its favor, of the issue argued in Part I will render moot the remainder of the Initial Brief, but in the event it does not, this Court should decline to review subsequent orders and judgments of the District Court.  In this "exceptional case" of vexatious litigation and bad faith conduct, the District Court's rulings should remain intact.

## <u>CONCLUSION</u>

The District Court did not abuse its discretion in denying Continental's First Motion to Voluntarily Dismiss. Nothing in the Initial Brief suggests, let alone compels, a finding to the contrary. For that reason, and those foregoing, the District Court's order denying the First Motion to Dismiss should be affirmed.

Dated this 27th day of December, 2022

/s/    *Ethan J. Loeb*
ETHAN J. LOEB
Florida Bar Number 0668338
EthanL@BLHTLaw.com
LoisF@BLHTLaw.com
HeatherW@BLHTLaw.com
STEVEN GIESELER
Florida Bar Number 880981
StevenG@BLHTLaw.com
LoisF@BLHTLaw.com
ALLISON C. DOUCETTE
AllisonD@BLHTLaw.com
LynseyH@BLHTLaw.com
Bartlett, Loeb, Hinds & Thompson, PLLC
100 North Tampa Street, Suite 2050
Tampa, Florida 33602
Telephone (813) 223-3888
Fax: (813) 228-6422
**Attorneys for Appellees, Houston Pipe Line Company, L.P. and HPL GP, LLC**

## <u>CERTIFICATE OF COMPLIANCE</u>

I HEREBY CERTIFY that this brief complies with the word limit to Fed. R. App. P. 32(a)(7)(B), excluding the parts of the document exempted by Fed. R. App. P. 32(f), the body of this document contains 7,763 words and 102 words in the footnotes. This document also complies with the typeface requirement of Fed. R. App. P. 32(a)(6) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman.

/s/ Ethan J. Loeb

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 27, 2022, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, and a copy via Federal Express to the following:

Stephen D. Busey
John R. Thomas
One Independent Drive, Suite 3300
Jacksonville, Florida 32202
*Attorneys for Appellant Continental Holdings, Inc.*

/s/ Ethan J. Loeb